UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 10-50977 (AHWS) |
| CHRISTOPHER M. COUGHLIN | : | CHAPTER 11 |
| Debtor in Possession | : | |

EASTERN SAVINGS BANK, FSB

    Movant

v.

CHRISTOPHER M. COUGHLIN
and the UNITED STATES TRUSTEE

    Respondents                                      AUGUST 20, 2010

## EASTERN SAVINGS BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, MOTION TO CONVERT OR DISMISS

NOW COMES Eastern Savings Bank, by and through its attorneys, Halloran & Sage LLP, which hereby moves for relief from the automatic stay in the above captioned Chapter 11 case, or in the alternative, for dismissal or conversion of the above captioned matter. In support of this Motion, the Movant represents as follows:

I. **Introduction**

On April 29, 2010, the Debtor commenced this case by filing a voluntary chapter 11 petition. The Debtor owns real estate located at 1 Random Road, Old Greenwich, Connecticut (hereinafter referred to as the "subject property").

By way of background, on or about August 28, 2006, the Debtor executed and delivered to Eastern Savings Bank ("ESB"), as Lender, a Promissory Note (the "Note") in the original principal amount of $1,309,000.00. A copy of that Note is attached hereto as Exhibit A. To secure the Note, the Debtor executed and delivered to ESB, an Open-End Mortgage Deed (hereinafter the "Mortgage"). A copy of that document is attached hereto as Exhibit B. The Mortgage granted to ESB a security interest in the subject property and was recorded in the Greenwich Land Records at Volume 5284, Page 0149. As a result, ESB was, and continues to be, the owner and holder of the Note and Mortgage.

Unfortunately, the Debtor only made mortgage payments for the first year of the loan. His last mortgage payment was on September 14, 2007. The Debtor has been in default since that time. As a result, ESB properly elected to accelerate the balance due on the Note and to declare said Note to be due and payable in full. By way of Complaint with a Return Date of February 26, 2008, ESB commenced a foreclosure proceeding in the Superior Court for the Judicial District of Stamford[1]. Although the Debtor raised special defenses in that action, ESB's Motion for Summary Judgment was granted on October 8, 2008 and its Motion for Strict Foreclosure was granted on October 5, 2009. A foreclosure sale was scheduled for May 1, 2010. That date was chosen to allow the Debtor time to complete a civil suit which, at that time, was scheduled for trial in February, 2010[2]. Trial of that lawsuit has since been rescheduled for March 15, 2011. The

---

[1] That case is entitled Eastern Savings Bank v. Christopher Coughlin, et al. and is currently pending in the Stamford Superior Court, Docket No. CV 08-5006336S.
[2] That case is entitled Christopher Coughlin v. Victoria Koch, et al, Docket No. CV 05-4007441, and has been pending since November of 2005.

2

foreclosure sale never took place, however, as the Debtor filed for bankruptcy protection on April 29, 2010.

As of August 1, 2010, the Debtor owed ESB $1,838,525.91, which amount includes interest and late charges but not attorney's fees. The Debtor on his Schedule A lists the subject property as having a value of $1,900,000.[3] Moreover, on his Amended Schedule D, the Debtor lists a second mortgage on the subject property in the amount of $145,000 in favor of Steven De Got. As a result, there is no dispute that the subject property has no equity.

## II. The Movant is Entitled to Relief from the Automatic Stay as there is no Equity in the Subject Property.

Bankruptcy Code § 362(a) establishes that a bankruptcy petition operates as a stay against most acts and actions against a debtor. Subdivision (d), however, contains the conditions for a party to secure relief from the automatic stay. These include "for cause, including the lack of adequate protection of an interest in property of such party in interest". In addition, relief is appropriate if the debtor "does not have equity in such property" and "such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d). The two tests under 362(d)(1) and (d)(2) are alternate tests and a party need only establish one of the two alternatives to obtain relief. First Connecticut Small Business Inv. Co. v. Ruark, 7 B.R. 46, 49 (1980). On motions for relief from stay, "the only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor." In Re. Shehu, 128 B.R. 26, 28 (1991).

---

[3] However, the Debtor testified at his 341 meeting that the subject property was appraised for $1,800,000 in March, 2010.

3

In this case, the Debtor concedes that there is a lack of equity as the Debtor lists the subject property on his Schedule A as having a value of $1,900,000 but ESB is owed $1,840,186.00. In addition, to the Movant's mortgage, the subject property is encumbered by a second mortgage in the amount of $145,000. As a result, even using the Debtor's value of the subject property, he has no equity.

Given that the subject property has no equity, the only issue under Section 362(d)(2) is whether the property is necessary to an effective reorganization. "Once the debtor's lack of equity in the collateral has been demonstrated, the burden shifts to the debtor to prove that the property is 'necessary to an effective reorganization.'" In re Washington Associates, 147 B.R. 827, 830 (E.D.N.Y. 1992), citing, 11 U.S.C. § 362(d). "The debtor must establish that there exists a 'reasonable possibility of a successful reorganization.'" In re. Thomas Parker Enterprises, Inc., 10 B.R. 783, 789 (D.Conn. 1981) (Citations omitted). Therefore, the fact that the Debtor intends to reorganize is not sufficient. "[I]f a debtor cannot establish that a reorganization can be achieved within a reasonable period, the court must grant an undersecured creditor relief from the stay." In re Washington Associates, 147 B.R. 827, 830 (E.D.N.Y. 1992) (Citation omitted). (Emphasis added.) "Generally, in considering a section 362(d) application, courts have examined whether there exist any clear legal obstacles to a plan's confirmation." Id., referencing, In re Northport Marina Assocs., 136 Bankr 903, 909 (Bankr. E.D.N.Y. 1992).

4

Case 10-50977    Doc 52    Filed 08/20/10    Entered 08/20/10 15:59:30    Desc Main
Document      Page 5 of 10

In this case, since the subject property has no equity, it cannot be necessary to an effective reorganization. Moreover, as the Movant will demonstrate, the Debtor will be completely unable to establish a "reasonable possibility of a successful reorganization within a reasonable time".

### III. This Chapter 11 Case Should be Converted or Dismissed as the Debtor will be Completely Unable to Confirm a Plan of Reorganization.

"[O]n request of a party in interest ... and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate ..." 11 U.S.C. § 1112. The court may do so for "cause" or for any of the reasons listed in 11 U.S.C. § 1112. A Debtor's inability to effectuate a plan, in and of itself, constitutes "cause" and may serve as a basis for conversion. In re. David Eugene Caldwell, 2007 Bankr. LEXIS 4641 (M.D.Tenn.2007). Even in light of the 2005 amendments to 11 U.S.C. § 1112, "[f]undamental bankruptcy policy continues to support the proposition that the inability to propose a feasible reorganization or liquidation plan provides 'cause' for dismissal or conversion of a chapter 11 case on request of an interested party." In re. DCNC North Carolina I, LLC, 407 B.R. 651 (E.D.Pa.2009). "Without a reasonable amount of assets and a feasibly operating business there is no logic in continuing a Chapter 11[proceeding]." In re 312 West 91st Street Co., Inc, 35 B.R. 346, 347 (Bkrtcy. S.D.N.Y. 1983) (citation omitted).

A lawsuit is "too ephemeral an asset" on which to support a plan of reorganization. In re. Bendig, 74 B.R. 47 (D.Conn, 1987). It is insufficient to

invoke Chapter 11 jurisdiction when the debtor's only asset appears to be a lawsuit. Id., referencing, In re Imperial Heights Apartments, Ltd., 18 B.R. 858 9 Bankr. S.D. Ohio 1982). In general, courts look to what capital and other assets a debtor possesses which can be used in his Plan of Reorganization, however, potential recovery from a lawsuit is insufficient to create a reasonable likelihood of rehabilitation. In re. Imperial Heights Apts., Ltd., 18 Bankr. 858 (Bkrtcy. S.D. Ohio 1982). "Since there is no way to establish the feasibility of a plan which is to be funded solely from the possibility of a lawsuit, bankruptcy courts will convert or dismiss such Chapter 11 cases. In re Edwards, 1996 Bankr. LEXIS 847 (D.Penn.). Courts should not approve plans, "whose sole source of funding are the speculative proceeds of various lawsuits in which the Debtors have not yet prevailed and whose resolutions do not seem likely in the near future." In re. Kleinman, 156 B.R. 131, 140 (S.D.N.Y., 1993).

Other courts have come to the same conclusion when faced with plans of reorganization funded almost exclusively from lawsuits. See, e.g., In re. Rey., 2006 Bankr. LEXIS 1803 (Bankr. N.D.. Ill.) (Court converted a chapter 11 case to a case under chapter 7 based upon the debtor's inability to fund a plan, where the debtor had few real assets other than numerous potential litigation claims, reasoning that "[t]o confirm a plan, a debtor's income projections must be based on concrete evidence and not be speculative or conjectural . . . . A lawsuit's outcome, though, is always speculative. Without a solid basis for believing litigation is highly likely to generate large sums of money quickly, it cannot provide a sufficiently reliable source of income to support confirmation.") (internal

6

quotations and citations omitted); In re. Maggaro, 84 B.R. 803, 805 (Bankr. M.D. Fl. 1988). (Granting motion to dismiss chapter 11 case where debtor's only asset that could fund reorganization was a potential lawsuit, reasoning that it has been "well recognized" that any plan proposed to be funded with proceeds from pending litigation is "not feasible" and warrants dismissal); In re Bock, 58 B.R. 374, 379 (Bankr. M.D. Fl. 1986) (Dismissing chapter 11 case where debtor had no assets save a lawsuit against a former employer, reasoning that there was no way for the debtor to establish the feasibility of the plan where it would be funded solely from a lawsuit).

In this case, the Debtor will be completely unable to effectuate any plan of reorganization. The Debtor has already testified at his § 341 hearing that he intends to fund his plan of reorganization with the judgment he hopes to obtain in his lawsuit. The Debtor's schedules show that there are no other assets with which to fund a plan. First, on his Schedule B, the Debtor lists assets of $11,558,049 but all of that amount save $29,760 is attributed to his lawsuit. As a result, the Debtor has no assets with which to fund a Plan other than his lawsuit. In addition, the Debtor's Monthly Operating Report for May, 2010 shows that the estate suffered a loss. Therefore, the estate is not generating any funds with which to fund a Plan.

The merits of that lawsuit also must be questioned. Upon information and belief, the defendants in that lawsuit are the Debtor's neighbors. According to the Fifth Amended Complaint ("FAC") filed by Debtor, the lawsuit, is predicated upon the defendants' alleged trespass against the Debtor based on alleged

7

installation of sub-surface utility lines for electric, telecommunications, consumptive water, sewage, and a drainpipe. Debtor alleges that these sub-surface utility lines prevent him from "developing his property or using it to its fullest." Considering the subject property is only .37 acre, already contains the Debtor's residence, and has been valued by the Debtor at $1.9 million, it is beyond comprehension how the Debtor could value his trespass claim in excess of $11,500,000. Possibly most telling, the Debtor has already sued the seller of the subject property based upon the seller's alleged breach of a warranty resulting from the existence of a floating easement. That trial, however, ended in a directed verdict in favor of the seller, eventually affirmed by the Connecticut Supreme Court. See, Coughlin v. Anderson, 270 Conn. 487; 853 A.2d 460 (2004).[4]

Lastly, it should be pointed out that jury selection for the Debtor's lawsuit is not scheduled to begin until March 15, 2010. However, by the end of December of this year, there will be due and owing from the Debtor to the Movant an additional $63,000 in interest. That amount, when added to the $1,838,525.91 due and owing (as of August 1, 2010), means that in mere months

---

[4] Plaintiff, now the Debtor, had claimed that the floating easement rendered the balance of his .37 acre lot, outside of the 1500 square feet occupied by the house, essentially worthless because nothing could be built, and no subdivision could occur. There was also a separate claim for negligence and breach of contract against his attorney for failure to discover the easement. The trial court entered a directed verdict for the defendants on the basis that the easement was extinguished by operation of law because there was no reference to it in the land records for over 40 years, and that, to the extent the easement was previously exercised through installation of three conduits, it was a valid partial encumbrance of the property, but not a total encumbrance that would exist if it were a floating easement. Coughlin appealed all the way to the CT Supreme Court, which affirmed, holding that the burden of proving existence of the easement as of the date of the deed, as well as non-extinguishment of the easement, was on the plaintiff, who had not met that burden.

the Movant will not be adequately protected.[5] As a result, the Movant should not be forced to sit and await the outcome of the Debtor's questionable lawsuit while, in the interim, it becomes inadequately protected.

WHEREFORE, the Movant respectfully requests that it be given relief from the automatic stay so that it may continue its prosecution of its currently pending foreclosure matter. Should the Court be unwilling to grant the Movant relief from the automatic stay, the Movant respectfully requests that this case be converted or dismissed as there is no feasible way for the Debtor to fund a plan of reorganization within a reasonable time.

Dated this 20th day of August, 2010.

EASTERN SAVINGS BANK, FSB

By /s/ Michael S. Wrona
Michael S. Wrona
Fed. Bar #ct 24105
HALLORAN & SAGE LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
(860) 522-6103

---

[5] Using the $1,800,000 appraised value as of March, 2010, testified to by the Debtor at the 341 meeting, Movant is already inadequately protected.

## CERTIFICATION

This is to certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing on this 20th day of August, 2010. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Michael S. Wrona

1809250v.1